**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ENDALIS ALVARADO COTTO, *et al.*, | |
| **Plaintiffs,** | **CIVIL NO.** 10-2241(JAG) |
| **v.** | |
| MUNICIPALITY OF AIBONITO, *et al.*, | |
| **Defendants.** | |

**OPINION AND ORDER**

GARCIA-GREGORY, D.J.

　　This is a political discrimination action brought pursuant to 42 U.S.C. § 1983 ("section 1983"), the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, (the "FMLA") and various Commonwealth of Puerto Rico laws. (Docket No. 1, ¶¶ 26, 33, 37-39, 41).　Pending before the Court is William Alicea-Perez ("Alicea"), Santos Solivan-Rivera ("Solivan"), Luis Jacob Rivera-Mercado ("Rivera-Mercado"), and Lissandra Maldonado-Alvarado's ("Maldonado") motion to dismiss (Docket No. 17) and the Municipality of Aibonito's (the "Municipality") (collectively, "Defendants") motion to dismiss (Docket No. 18). For the reasons discussed below, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss.

CIVIL NO. 10-2241 (JAG)                                                  2

**BACKGROUND**

**I. Factual Background**

The facts contained in the complaint, which are assumed to be true, are as follows:[1]

Plaintiff Ednalis Alvarado Cotto ("Alvarado"), a resident of Cayey, Puerto Rico, is an active member of the Popular Democratic Party ("PDP"), and has attended political caravans and electoral colleges in support of the PDP. (Docket No. 1, ¶¶ 9). In 2004 and 2008, Alvarado participated in the PDP electoral campaign. Id.

In 1999, non-party Alberto Diaz Robles ("Robles"), a member of the PDP, was the Municipality's mayor. (Docket No. 1, ¶ 10). Sometime around February of that year, Robles' "conduit" hired Alvarado as the Municipality's "Office System Auxiliary I." (Docket No. 1, ¶¶ 3, 10). In November of 2008, Alicea, a member of the New Progressive Party ("NPP"), was elected as the Municipality's mayor. (Docket No. 1, ¶¶ 11-12). Once Alicea assumed the Municipality's mantle, Defendants, who are all NPP members, allegedly began to humiliate, harass and discriminate

---

[1] In setting forth the relevant factual background, the Court keeps in mind that "legal conclusion[s] couched as . . . fact [],", and "[t]hreadbare recitals of the elements of a cause of action" must be disregarded. Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011)(citing Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 557))). In contrast, "[n]on-conclusory factual allegations in the complaint must . . . be taken as true, even if seemingly incredible." Id. (citing Iqbal, 129 S.Ct. at 1951).

CIVIL NO. 10-2241 (JAG)                                                3

against Alvarado because of her PDP affiliation.[2]   (Docket No. 1, ¶¶ 13, 26, 33, 37-39, 41).

Alvarado states that she faces undue pressure, unreasonable terms and conditions in her work environment, a hostile work environment, treatment inferior to other employees and diminished working conditions. (Docket No. 1, ¶¶ 13, 16, 26, 36). Specifically, Plaintiffs pled that Alvarado is denied breaks, has her computer access limited, is subject to increased monitoring, has her functions and instructions constantly changed, is subject to unfounded admonishment letters, involuntary transfers and has her rights under the FMLA interfered with. Id. Plaintiffs allege that Defendants made derogatory and discriminatory comments relating to Alvarado's PDP membership and work performance. (Docket No. 1, ¶ 32).

Around March of 2010, Alvarado's son fell ill and was admitted to the hospital. (Docket No. 1, ¶ 17). Alvarado was granted leave from work for five (5) days to tend to her son. Id. Nevertheless, Maldonado, the Municipality's Director of Human Resources, purportedly told Alvarado that her leave would be deducted from her vacation days.[3] Although Alvarado requested an explanation from Alicea and Maldonado, she never received one. Id.

---

[2] Plaintiffs aver that Defendants discriminated against Alvarado with the hope of pushing her to resign or fabricating cause to terminate her. Id.
[3] Alicea appointed Maldonado. (Docket No. 1, ¶ 5).

CIVIL NO. 10-2241 (JAG)                                              4

In June of 2010, Maldonado and nonparty Sandra Rivera ("Rivera"), the director of the Municipality's Federal Program Office ("FPO"), assigned Alvarado a task to complete for the FPO. (Docket No. 1, ¶ 18). After Rivera-Mercado replaced Rivera as the FPO director, Alvarado met with Rivera-Mercado to discuss the assignment she was completing for the FPO. Id. Rivera-Mercado told Alvarado that although she was not required to work for the FPO, she may continue her assignment as long as Alvarado's other duties were unaffected. Id. Rivera-Mercado told Alvarado that if she became overwhelmed with work, she could return the assignment to Rivera-Mercado's office. Id.

Alvarado allegedly spoke to Alicea about Maldonado's apparent hostility on July 12, 2010. (Docket No. 1, ¶ 19). According to Alvarado, despite knowing about the discrimination, Alicea did not remedy the situation. Id. Rather, Alicea permitted and promoted the discrimination, harassment and undue pressure. Id. Alvarado states that Defendants' discriminatory behavior escalated after Alvarado complained to Alicea. Id.

On August 7, 2010, Maldonado sent Alvarado a memorandum assigning her new duties as medical plan biller. (Docket No. 1, ¶ 20). The work was to be performed for the Human Resources Office, not the FPO. Id. Subsequently, Alvarado met with Rivera-Mercado to inform her of Alvarado's new assignment and return the work Alvarado was performing for the FPO. (Docket

CIVIL NO. 10-2241 (JAG)                                        5

No. 1, ¶ 21).   Alvarado told Rivera-Mercado that she would
continue monitoring the developments in the FPO since the
assignment stalled pending completion of a construction project.
Id.  Alvarado maintained files so she could continue the project
once the construction resumed.[4]   Id.

On August 18, 2010, Alvarado received a letter from Solivan,
the Municipal Secretary, purportedly admonishing her for
refusing to perform duties assigned to her. (Docket No. 1, ¶
22).  Solivan told Avarado that the admonishment was based on a
letter Rivera-Mercado sent to Maldonado.   Apparently, Rivera-
Mercado told Maldonado that Alvarado failed to perform duties
for the FPO.   (Docket No. 1, ¶ 23-24).   Although Alvarado
demanded an explanation, Defendants never investigated and
Alvarado was never given an opportunity to respond to the
admonishment.   (Docket No. 1, ¶ 25).   The complaint states that
Alvarado never refused work for the FPO, she merely told Rivera-
Mercado about her new duties.   (Docket No. 1, ¶ 21).

Alvarado received another admonishment letter on August, 9,
2010.   (Docket No. 1, ¶ 27).   According to Alvarado, she
received the letter because she asked to bring her son to work
after her son's caretaker faced an emergency.   Id.  Alvarado
received the admonishment despite an internal memorandum, which

_____

[4] As of December 17, 2010, the construction was still "closed."  (Docket No.
1, ¶ 21).

CIVIL NO. 10-2241 (JAG)                                                    6

was previously circulated to employees, stating that employees are permitted to bring their children to work in emergency situations. (Docket No. 1, ¶ 28). Alvarado avers that the other employees were not admonished for bringing their children to work. (Docket No. 1, ¶ 29).

At some point thereafter, Maldonado sent Alvarado another letter stating that she exhibited a pattern of absenteeism. (Docket No. 1, ¶ 30). The letter states that Alvarado was absent from work for twenty three (23) days. According to Alvarado, nineteen (19) of those days were authorized: ten (10) days of annual vacation leave, five (5) days when her son was hospitalized and four (4) days that Alicea "granted to the Municpality['s] employees to be used from their vacation days."[5] Id. Alvarado asked Alicea to intervene on her behalf, but Alvarado has yet to receive an answer. (Docket No. 1, ¶ 31).

Alvarado states that Defendants' actions caused her to suffer emotional and mental harm and forced her to receive treatment. (Docket No. 1, ¶ 36, 40). Defendants' discriminatory acts against Alvarado also allegedly caused injury to her spouse Jesus Ramirez Rodriguez ("Ramirez") and the conjugal partnership established between them (the "Conjugal Partnership"). (Docket No. 1, ¶ 42). Ramirez states that he suffered anxiety after

---

[5] The complaint does not indicate whether the four (4) days Alicea granted the Municipality's employees to use from their vacation days were in addition to the ten (10) days of annual vacation leave.

CIVIL NO. 10-2241 (JAG)                                                    7

watching Alvarado's mental health deteriorate.  (Docket No. 1, ¶ 43).

## II.  Procedural Background

Alvarado, Ramirez, and the Conjugal Partnership (collectively, "Plaintiffs"), commenced the instant action by filing a complaint on December 17, 2010.  (Docket No. 1).  Plaintiffs brought suit under (1) section 1983 alleging that their rights under the First, Fifth and Fourteenth Amendments of the Constitution were violated;[6] (2) the FMLA; and (3) various Commonwealth of Puerto Rico Laws.[7]  The gravamen of Plaintiffs' complaint is that Defendants discriminated against Alvarado because of her PDP affiliation.  (Docket No. 1, ¶¶ 26, 33, 37-39, 41).

On March 18, 2011, Alicea, Santos, Rivera and Maldonado moved the Court pursuant to FED. R. CIV. P. 12(b)(6)("Rule 12(b)(6)") to dismiss Plaintiffs' complaint.  (Docket No. 17).  On the same

---

[6] Plaintiffs have not pled the Fifth Amendment as a separate cause of action. (Docket No. 1).  Plaintiffs merely state, in the complaint's "introduction," that Defendants deprived Plaintiffs of their rights under the Fifth Amendment to the constitution.  (Docket No. 1, p. 2).  In an abundance of caution, the Court will consider plaintiffs' Fifth Amendment claim.

[7] Plaintiffs allege that Defendants violated:  (1) Article II, Sections 1, 4, 5, 6 and 7 of the Constitution of the Commonwealth of Puerto Rico;  (2) the "Public Service Personnel Laws of Puerto Rico";  (3) Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141 ("Article 1802");  (4) Article 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5142 ("Article 1803");  (5)  Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29 § 146 ("Law 100");  (6) Law No. 184 of August 3, 2004, P.R. Laws Ann. tit. 3 § 1461 *et seq* ("Law 184").  The Court is unaware and Plaintiffs do not cite to any Puerto Rico law entitled "Public Service Personnel Laws of Puerto Rico."

CIVIL NO. 10-2241 (JAG)                                          8

day, the Municipality also moved to dismiss Plaintiffs'
complaint pursuant to Rule 12(b)(6). (Docket No. 18).
Plaintiffs responded to both motions on April 27, 2011. (Docket
No. 25). The Municipality replied on May 16, 2011. (Docket No.
30). Alicea, Santos, Rivera and Maldonado did not submit a
reply.


                          STANDARD OF LAW

     Under Rule 12(b)(6), a defendant may move to dismiss an
action for failure to state a claim upon which relief can be
granted. To overcome a Rule 12(b)(6) motion, the complaint must
plead sufficient facts "to state a claim to relief that is
plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.
544, 570 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662
(2009).

     In Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir.
2011), the First Circuit distilled from Twombly and Iqbal a two-
pronged test designed to measure the sufficiency of a complaint.
First, the reviewing court must identify and disregard
"statements in the complaint that merely offer legal conclusions
couched as fact, or threadbare recitals of the elements of a
cause of action." Ocasio-Hernández, 640 F.3d at 12 (internal
punctuation omitted). In this analysis, the remaining non-
conclusory factual allegations must be taken as true, even if

they are "seemingly incredible," or that "actual proof of those facts is improbable." Id. Finally, the court assesses whether the facts taken as a whole "state a plausible, not merely a conceivable, case for relief." Id.

In conducting this test, a court must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. Ocasio-Hernández, 640 F.3d at 12. Thus, "[t]he relevant inquiry forces on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint." Id. at 13.

## DISCUSSION

The Court's analysis is divided into four parts. In the first part, the Court addresses whether Ramirez has standing to bring suit under section 1983 and the FMLA. Next, the Court discusses whether Alvarado is able to state a claim under section 1983 for violations of Alvarado's rights under the First, Fifth and Fourteenth Amendments to the Constitution and, if so, whether the Defendants are entitled to qualified immunity. In the third part, the Court analyzes Alvarado's cause of action brought pursuant to the FMLA. Finally, because the Court maintains supplemental jurisdiction over Plaintiffs' state law claims, the Court discusses whether Plaintiffs adequately pled a clause of action under Law 100, Article 1802 and Article 1803.

CIVIL NO. 10-2241 (JAG)                                    10

## I. Standing

Standing concerns "whether the party invoking jurisdiction ha[s] the requisite stake in the outcome when the suit was filed." Davis v. Fed. Election Com'n, 554 U.S. 724, 734 (2008). Defendants argue that Ramirez and the Conjugal Partnership lack standing to bring a section 1983 action because they did not suffer a constitutional violation. (Docket No. 17, pp. 24-26; Docket No. 18, pp. 19-22). The Court also reviews whether Ramirez and the Conjugal Partnership have standing to bring suit pursuant to the FMLA *sua sponte*. See Pagan v. Calderon, 448 F.3d 16, 26 (1st Cir. 2006)(internal citations omitted)(holding that prior to addressing the substance of a plaintiff's claim, a court may address the plaintiff's standing even if it is not raised by the litigants).

### A. Ramirez's and the Conjugal Partnership's Standing To Bring Suit Under Section 1983

Defendants argue that Ramirez and the Conjugal Partnership lack standing to sue under section 1983 because neither Alvarado nor the Conjugal Partnership suffered a constitutional deprivation. (Docket No. 17, pp. 24-26; Docket No. 18, pp. 19-21). Plaintiffs do not address Ramirez's and the Conjugal Partnership's standing in their response to Defendants' motions to dismiss. (see Docket No. 25). The Court agrees that Ramirez

CIVIL NO. 10-2241 (JAG)                                          11

and the Conjugal Partnership do not have standing to sue
pursuant to section 1983.

    To have standing under section 1983, Plaintiffs must plead
that Ramirez and the Conjugal Partnership were personally
injured by the alleged unconstitutional conduct. Mangual v.
Rotger-Sabat, 317 F.3d 45, 56 (1st Cir. 2003); Vargas v.
Carrión, No. 10-1153, 2011 WL 92030, at *2 (D.P.R. Jan. 3,
2011)(internal citations omitted).   Thus, the general rule is
that family members and conjugal partnerships do not have
standing to bring a section 1983 claim for their own injury.[8]
Robles-Vazquez v. Tirado Garcia, 110 F.3d 204, 206 n.4 (1st Cir.
1997);  Sánchez-Arroyo v. Dep't of Educ. of P.R., No. 10-2083,
2012 WL 288676, at *13 (D.P.R. Feb. 1, 2012).   Courts recognize
a limited exception to the general rule where the alleged
underlying constitutional violation was aimed at the family
relationship.    Id.    (internal  citations  omitted).
Constitutional violations that interfere with certain private
decisions or the parent-child relationship are aimed at the
family relationship. Ramirez-Lluveras, 2011 WL 4552536, at *4
(citing Reyes Vargas v. Rosello Gonzalez, 135 F.Supp.2d 305,

---

[8]  In contrast, in the District of Puerto Rico, a decedent's heirs have
standing to bring suit under section 1983 on behalf of the decedent. Ramirez-
Lluveras v. Pagan-Cruz, No. 08-1486, 2011 WL 4552536, at *3 (D.P.R. Oct. 3,
2011)(citing Robertson v. Wegmann, 436 U.S. 584 (1978);  Gonzalez Rodriguez
v. Alvarado, 134 F.Supp.2d 451, 452-54 (D.P.R. 2001)).

CIVIL NO. 10-2241 (JAG)                                          12

308-09 (D.P.R. 2011)(citing <u>Pittsley v. Warish</u>, 927 F.2d 3, 8
(1st Cir. 1991))).

The complaint alleges that Defendants discriminated against
Alvarado because of her PDP affiliation. (Docket No. 1, ¶¶ 26,
33, 37-39, 41). The complaint also states that Defendants'
alleged discriminatory conduct caused injury to Ramirez and the
Conjugal Partnership. Yet, there is no indication that Ramirez
or the Conjugal Partnership were personally subject to a
constitutional deprivation. (Docket No. 1, ¶ 42). Ramirez's
alleged damages stem from watching Alvarado's mental health
deteriorate and being forced to reorder his life. (Docket No.
1, ¶ 42-43). In addition, Defendants' alleged unconstitutional
actions were not aimed at the familial relationship; rather
their conduct concerned Alvarado's employment with the
Municipality. (Docket No. 1, ¶¶ 13, 26, 33, 37-39, 41); <u>Lopez-
Jimenez v. Pereira</u>, No. 09-1156, 2010 WL 500407, at *1 (D.P.R.
Feb. 3, 2010)(citing <u>Pittsley</u>, 927 F.2d 3, 8 (1st Cir. 1991)).
Since Ramirez and the Conjugal Partnership did not plead that
they suffered a constitutional deprivation or that Defendants'
actions were aimed at the familial relationship, Ramirez and the
Conjugal Partnership do not have standing to bring suit under
section 1983. Ramirez's and the Conjugal Partnership's actions

CIVIL NO. 10-2241 (JAG)                                        13

brought pursuant to section 1983 are hereby **DISMISSED WITH PREJUDICE.**

### B. Ramirez's and the Conjugal Partnership's Standing To Bring Suit Under the FMLA

The FMLA provides, *inter alia*, that "eligible employers" must provide "eligible employees" with up to 12 workweeks of leave per year in the event of specified events.[9]   29 U.S.C. § 2612(a)(1).   The FMLA provides an employee with right of action against an employer if the employer interferes with the employee's FMLA rights or retaliates against an employee who invokes FMLA rights.   Roman v. Potter, 604 F.3d 34, 40 (1st Cir. 2010)(internal citations omitted).

It is axiomatic that a person must be an eligible employee within the meaning of the FMLA to be offered a remedy under the FMLA.   See 29 U.S.C. § 2612(a)(1).   The FMLA defines an eligible employee as "an employee who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested . . . and (ii) for at least 1,250 hours for service with such employer during the previous 12-month period."   29 U.S.C. § 2611(2)(A).   The complaint alleges that Defendants violated Alvarado's FMLA rights when Defendants retaliated against Alvarado for taking FMLA leave.   (Docket No. 1, pp. 13-

---

[9] The specified events include: caring for a child after birth; placement of a child for adoption or foster care; caring for a spouse, son, daughter or parent with a serious health condition; or suffering a serious health condition.   29 U.S.C. § 2612(A)(1)(A)-(D).

CIVIL NO. 10-2241 (JAG)                                           14

14).  The complaint does not aver that Ramirez or the Conjugal Partnership were Defendants' employees.  Alvarado, not Ramirez or the Conjugal Partnership, was hired to work for the Municipality.  (Docket No. 1, ¶¶ 3, 10).  Because Ramirez is not an eligible employee, Ramirez does not have standing to bring a claim pursuant to the FMLA and Ramirez's and the Conjugal Partnership's action brought pursuant to the FMLA are **DISMISSED WITH PREJUDICE**.[10]  See 29 U.S.C. § 2611(2)(A)(i);   Smith v. Bellsouth Telecomms., Inc., 273 F.3d 1304, 1306 (11th Cir. 2001).

## II. Section 1983 Claim

Section 1983 provides a right of action against those who violate constitutional rights.[11]  Inyo Cnty., Cal. v. Paiute-Shoshone Indians of the Bishop Cmty. of the Bishop Colony, 538

---

[10] Whether a person is an eligible employee, within the meaning of the FMLA, is often viewed as concerning a plaintiff's standing to bring suit.  See Bellsouth Telecomms, 273 F.3d at 1306.  Other courts approach the question as a substantive element of a claim.  See e.g., Duckworth v. Pratt & Whitney, Inc., 152 F.3d 1 (1st Cir. 1998).  The Court chooses to analyze the issue under the standing rubric.  Regardless, the Court notes that Ramirez's and the Conjugal Partnership's claim brought under the FMLA must also be dismissed because they are unable to establish that they are eligible employees and as such fail to state a claim upon which relief can be granted. Id.

[11] Section 1983 states, in pertinent part, that:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

U.S. 701, 708 (2003).  To state a claim under section 1983, Alvarado must plausibly plead that: (1) Alvarado was deprived of a constitutional right; (2) "a causal connection between [Defendants' conduct] and the [constitutional] deprivation"; and (3) "state action."[12]  Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009)(citing 42 U.S.C. § 1983).  Defendants argue that Plaintiffs insufficiently pled the second and third elements of a 1983 action: whether Defendants caused Plaintiffs to be deprived of a constitutional right.  (Docket No. 17, pp. 6-24; Docket No. 18, pp. 4-19).  The essence of Defendants' contention is that Alvarado's "allegations are conclusory and devoid of any facts in support thereof."  (Docket No 17, p. 8; Docket No. 18, pp. 6-7).  In the alternative, Alicea, Santos, Rivera-Mercado and Alvarado argue that they are entitled to qualified immunity.[13]  (Docket No. 17, pp. 21-24; Docket No. 18).  Plaintiffs counter that the complaint adequately describes a plausible entitlement to relief.  (Docket No. 25, pp. 7-11).

**A. Deprivation of a Constitutional Right**

Alvarado contends that Defendants violated her rights under the First, Fifth and Fourteenth Amendments to the Constitution.

---

[12] Alvarado and the Conjugal Partnership also allege that Defendants' are liable to them under section 1983.  The Court, however, already concluded that Alvarado and the Conjugal Partnership do not have standing under section 1983.
[13] The Municipality does not argue that they are entitled to qualified immunity.

(Docket No. 1).   Although Alvarado plausibly pled a claim under the First Amendment, Alvarado failed to do so under the Fifth and Fourteenth Amendments.


### 1. First Amendment

The First Amendment to the Constitution states, in pertinent part, that "[c]ongress shall make no law . . . abridging the freedom of speech . . . or the right of the people to peaceably assemble . . ."[14] U.S. Const., amend. 1.  The First Amendment rights to freedom of speech and to peaceably assemble embody the right to be free from political discrimination. Barry v. Moran, 661 F.3d 696, 699 (1st Cir. 2011).  To state a claim for political discrimination under the First Amendment, Alvarado must have plausibly pled that: (1) Alvarado and Defendants have opposing political affiliations; (2) Defendants knew of Alvarado's PDP affiliation; (3) Alvarado was subject to an adverse employment action; and (4) Alvarado's PDP affiliation was a substantial or motivating factor for the adverse employment action.  Méndez-Aponte v. Bonilla, 645 F.3d 60, 64 (1st Cir. 2011)(citing Ocasio-Hernández, 640 F.3d at 13).

### a. Opposing Political Affiliations

---

[14] The First Amendment applies to Puerto Rico through the First Amendment's incorporation into the Fourteenth Amendment.  Maymi v. P.R. Ports Auth., 515 F.3d 20 (1st Cir. 2008).

CIVIL NO. 10-2241 (JAG)                                          17

Alvarado adequately pled that she has an opposing political affiliation from the Defendants because Alvarado pled that she is a member of the PDP whereas "all of the [D]efendants are members of the NPP." (Docket No. 1, ¶¶ 11, 14); See Ocasio-Hernández, 640 F.3d at 13; Acevedo-Conception v. Irizarry-Mendez, No. 09-2133, 2011 WL 6934791, at *2 (D.P.R. Dec. 29, 2011)(holding that the plaintiffs sufficiently pled that they had different political affiliations from the defendants when the complaint stated that the plaintiffs are "persons identified with the [PDP]" while the defendants are "members of the NPP, a fact well known in [their] workplace and in [their] communities].")

In Ocasio-Hernández, the First Circuit Court of Appeals addressed whether the plaintiff adequately pled that the plaintiff and defendants had opposing political affiliations. 640 F.3d at 13. There, the plaintiff pled that the "[d]efendants all belong to the NPP," "[e]ach and all plaintiffs are members of the popular Democratic party . . . or are believed to be a member of the PDP," and that each plaintiff "was not a known member of the [NPP]." Id. The First Circuit held that the plaintiff adequately pled that the plaintiff and defendants had opposing political affiliations. Id. The court

reasoned that, at the summary judgment stage, the plaintiffs' averments are presumed to be true. Id.

In the case at bar, like in Ocasio-Hernández, Alvarado pled that she is a member of the PDP. (Docket No. 1, ¶ 9). Similar to Ocasio-Hernández, Alvarado also pled that "all of the [D]efendants are members of the NPP." (Docket No. 1, ¶ 14). Thus, Alvarado's averments, like the averments in Ocasio-Hernández, are presumed to be true, and as such, are sufficient to plausibly plead that Alvarado and Defendants belonged to opposing political affiliations. Id.

> b. Knowledge of Alvarado's PDP Affiliation

Defendants also contend that Alvarado insufficiently pled the second element required to establish a First Amendment political discrimination claim: that Defendants' knew of Alvarado's PDP affiliation. (Docket No. 17, pp. 11, 14; Docket No. 18, pp. 7, 11, 12). Defendants contend that the complaint is insufficient because it merely alleges that Defendants knew of Alvarado's PDP affiliation, without explaining how Defendants acquired the knowledge. Id.

At the motion to dismiss stage, Alvarado need only plead facts "to support a reasonable inference that the . . . defendants had knowledge of their political beliefs." Ocasio-Hernández, 640

CIVIL NO. 10-2241 (JAG)                                    19

F.3d at 15.  In so doing, the Court must take into account the "cumulative effect of the factual allegations." Id.  Alvarado pled that she is an active member of the PDP and has attended PDP political caravans and electoral colleges. (Docket No. 1, ¶ 8).  In 2004 and 2008, Alvarado participated in the PDP electoral campaign. (Docket No. 1, ¶ 9).  In February of 1990, Alvarado was hired as the Municipality's "Office System Auxiliary I," by non-party Robles, a PDP member. Id.  After Alicea, a member of the NPP, was elected the Municipality's mayor, Defendants made derogatory and discriminatory comments relating to Alvarado's PDP membership. (Docket No. 1, ¶¶ 11-12, 32).

Moreover, Alvarado spoke to Alicea about Maldonado's apparent hostility on July 12, 2010. (Docket No. 1, ¶ 19).  According to Alvarado, despite knowing about the discrimination, Alicea did not take action. Id.  Defendants attempt to persuade the Court that Alvarado did not establish that Alicea knew of her PDP membership because Alvarado spoke to Alicea about the discrimination after the alleged discrimination began. (Docket No. 17, p. 14; Docket No. 18, p. 11).  This argument is inapposite because Alvarado alleges that the political discrimination not only continued but became even worse after informing Alicea of the discrimination. (Docket No. 1, ¶ 19).

CIVIL NO. 10-2241 (JAG)                                                        20

Del Toro Pacheco v. Pereira, 633 F.3d 57 (1st Cir. 2011) is instructive.   In Del Toro, the plaintiff brought suit against two of his supervisors alleging that they terminated the plaintiff because of his political beliefs.   Id. at 58.   The District Court granted the supervisors' motion for summary judgment because the plaintiff was unable to establish that the supervisors knew of the plaintiff's political affiliation.   Id. at 59.   The First Circuit Court of Appeals affirmed, although partially on other grounds.   Id. at 63-64.   The court found that one of the plaintiff's supervisors did not know of plaintiff's political affiliation because the plaintiff admitted that he never discussed politics with the supervisor, let alone know or speak to the supervisor.   Id. at 62.   As to the other supervisor, the court found that the plaintiff raised an issue of material fact as to whether the supervisor had knowledge of the plaintiff's political affiliation.[15]   Id. at 62-63.   The court pointed to the evidence that the supervisor told the plaintiff that "[y]ou are going to be one of us, of the 'reds,' you are going to be a [PDP] member," made comments deriding the plaintiff for his NPP affiliation and urged him to switch to the PDP in order to keep his job.   Id.

---

[15] The court in Del Toro ultimately concluded that there is no genuine issue of material fact concerning whether the plaintiff's political persuasion was a substantial or motivating factor behind the adverse employment action.   Id. at 63.

CIVIL NO. 10-2241 (JAG)                                           21

Here, like in <u>Del Toro</u>, the question before the court is Defendants' knowledge of Alvarado's political affiliation. Similar to <u>Del Toro</u>, Alvarado alleges that Defendants made derogatory and discriminatory comments relating to Alvarado's PDP membership.  (Docket No. 1, ¶¶ 11-12, 32).  Thus, it is plausible that the Defendants knew of Alvarado's PDP membership.

The supervisor's statements in <u>Del Toro</u>, are arguably more detailed than Alvarado's allegations in the instant case.  This is not surprising because the parties had the opportunity to conduct discovery.  The court in <u>Del Toro</u>, was analyzing the supervisor's statements at the summary judgment stage, whereas the Court, in the instant matter, is merely at the motion to dismiss stage.  Additionally, litigants bear a more exacting standard at the summary judgment stage than at the motion to dismiss stage.  To defeat a summary judgment motion, there must be a genuine issue of material fact.  F<span style="font-variant:small-caps">ED</span>. R. C<span style="font-variant:small-caps">IV</span>. P. 56; <u>See Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000).  In contrast, in ruling on a motion to dismiss, a plaintiff need only state a "plausible . . . case for relief.  <u>Ocasio-Hernández</u>, 640 F.3d at 12 (internal citations omitted).  Thus, because the supervisor's statements in <u>Del Toro</u> deriding the plaintiff because of his NPP affiliation and urging him to change allegiances to the PDP were sufficient to

create a genuine issue of material fact as to the supervisors'
knowledge of the plaintiff's political affiliation, Alvarado's
averments, in the instant case, that Defendants made derogatory
and discriminatory comments relating to Alvarado's PDP
membership is, *a fortirori*, sufficient to plausibly plead that
Defendants knew of Alvarado's PDP membership.

This Court's decision in <u>Acevedo-Concepcion</u> is
distinguishable. 2011 WL 6934791. In <u>Acevedo-Conception</u>, the
plaintiffs alleged that defendants were "all active members of
the PDP, a fact well known in their workplaces and in their
communities." <u>Id.</u> at *2. There, the Court held that this
statement, standing alone, was insufficient to raise the
inference that the defendants knew of the plaintiff's political
affiliation. <u>Id.</u> The Court also concluded that the complaint
did not contain any "factual basis" that would permit a
reasonable inference that the defendants had knowledge of the
plaintiffs political affiliation. <u>Id.</u> The plaintiffs'
averments were threadbare, speculative and failed to cross the
line from conclusory to factual. <u>Id.</u> In contrast to the
complaint in <u>Acevedo-Conception</u>, Alvarado pled more than that
the Defendants' knew of her PDP membership. Alvarado alleged
"discrete factual events" permitting a reasonable inference that
Defendants knew of her PDP membership when Alvarado states that

Defendants made discriminatory comments relating to Alvarado's PDP membership.  (Docket No. 1, ¶¶ 11-12, 13); Ocasio-Hernández, 640 F.3d at 14.  Moreover, Alvarado alleges that she told Alicea about Maldonado's hostility, but Alicea sat on his hands. (Docket No. 1, ¶ 19).  Accordingly, here, unlike in Acevedo-Conception, Alvarado's statements are presumed to be true and are sufficient to plausibly plead that the Defendants' knew of her PDP membership.  Thus, Plaintiff's alleged sufficient "factual events" that give rise to the inference that Defendants had knowledge of Alvarado's PDP affiliation. See Ocasio-Hernández, 640 F.3d at 14-15; Del Toro, 633 F.3d 57 (1st Cir. 2011); Rodríguez v. Municipality of San Juan, 659 F.3d 168, 177 (1st Cir. 2011).

c. Adverse Employment Action

The complaint alleges that Defendants began a pattern of discriminatory conduct immediately after Alicea was elected the Municipality's mayor.  (Docket No. 1, ¶¶ 13, 26, 33, 37-39, 41). Defendants argue that Alvarado's allegations have "no factual basis in the complaint."  (Docket No. 17, pp. 9-10, 13).  The Court finds that the complaint sufficiently pled an adverse employment action because it plausibly described that Alvarado was: (1) assigned duties outside of her job description; (2)

treated differently than other employers; and (3) subjected to informal harassment. (Docket No. 1, ¶¶ 13, 16, 26, 32, 36).

An employment action is adverse, for First Amendment purposes, "if those actions, objectively evaluated would place substantial pressure on even one of thick skin to conform to the prevailing political view." Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 766 (1st Cir. 2010)(internal citations and punctuation omitted). In general, firing, demoting, denying promotions, transfers and failing to recall a public employee after layoffs constitute adverse employment actions. Id. A "substantial alteration" in duties may also be considered an adverse employment action. See Bergeron v. Cabral, 560 F.3d 1, 8 (1st Cir. 2009). Alvarado was hired in February of 1999 to be the Municipality's "System Auxiliary I." (Docket No. 1, ¶¶ 3, 10). In June of 2010, Rivera, the director of the FPO assigned Alvarado a task outside her regular duties. (See Docket No. 1, ¶ 18). Again, on August 7, 2010, Maldonado sent Alvarado a memorandum assigning her new duties as medical plan biller. (Docket No. 1, ¶ 20). The record at the motion to dismiss stage lacks sufficient facts to accurately compare Alvarado's duties before and after the change in administration. Nevertheless, at the motion to dismiss stage, plaintiffs are not expected to color in every detail. They must merely plead, in a plausible

manner, that the terms and conditions of employment were substantially changed to Alvarado's detriment.

Alvarado also pled that she was treated differently than other employees because of her PDP affiliation. (see e.g., Docket No. 1, ¶¶ 16, 29). A court will find an adverse employment action when the plaintiff is confronted with "a work situation unreasonably inferior to the norm for the position." Rodríguez-García, 610 F.3d at 766 (internal citations and punctuation omitted). Alvarado avers that she was punished because she asked to bring her son to work after her son's caretaker faced an emergency despite an internal memorandum stating that employees are permitted to bring their children to work in case of emergencies. (Docket No. 1, ¶¶ 27-28). Alvarado states that other employees were not admonished for bringing their children to work. (Docket No. 1, ¶ 29). Similarly, Alvarado alleges that the five (5) days off from work the Municipality granted to tend to her son who was admitted to the hospital were deducted from her vacation days. (Docket No. 1, ¶ 17). (Docket No. 1, ¶ 28); See Coffman v. Tracker Marine, L.P., 141 F.3d 1241, 1244 (8th Cir. 1998)(observing that in the Title VII, 41 U.S.C. § 2000e et seq., ("Title VII") context, denying days off for federal holidays constitutes an adverse employment action).

The First Circuit has explained that, "[a]ctions of informal harassment, as opposed to formal employment actions . . . can be the basis for the [F]irst [A]mendment claims . . . ."[16] Welch v. Ciampa, 542 F.3d 927, 937 (1st Cir. 2008)(internal citations omitted); Barton v. Clancy, 632 F.3d 9, 29 (1st Cir. 2011)(1st Cir. 1989).   Alvarado states that she has been denied breaks and has her computer access limited.   See Carrasquillo-Gonzalez v. Sagardia-De-Jesus, 723 F. Supp. 2d 428, 435 (D.P.R. 2010)(quoting Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1219 (1st Cir. 1989)(noting that courts "consider additional factors such as 'lost access to telephone and photocopier, poorer office accoutrements, worse hours . . . .'"). Additionally, Alvarado states that "Defendants have constantly made derogatory and discriminatory comments relating to her political affiliation . . . ." (Docket No. 1, ¶ 32). Admittedly, "[a] single insult by a co-worker with no supervisory power is not political discrimination by one exercising authority." Rosario-Urdaz, 433 F.3d at 179 (citing

---

[16] In contrast, for purposes of Title VII, "adverse employment action" is used "as a shorthand for the statutory requirement that a plaintiff show an alteration in the material terms or conditions of his employment." 632 F.3d at 29 (quoting Bergeron, 560 F.3d at 7–8).  The First Amendment standard is lower than in the Title VII standard.  Rivera-Jimenez v. Pierluisi, 362 F.3d 87, 94 (1st Cir. 2004).  Indeed, the Supreme Court has even stated that "the First Amendment . . . protects state employees not only from patronage dismissals but also from even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . ." Rutan v. Republican Party of Ill., 497 U.S. 62, 76–77 (1990)(internal citations and quotations omitted).  Here, the complaint plausibly shows that Alvarado was subject to informal harassment and had her duties "substantially altered."

<u>Webber v. Int'l Paper Co.</u>, 417 F.3d 229, 236-37 (1st Cir. 2005). Alvarado pled that Alicea, Santos, Rivera-Mercado and Maldonado had some level of supervisory responsibility over Alvarado. Given the record before the Court and the instant case's procedural posture, whether Defendants' purported harassment, in fact, consisted of a single insult or was "sufficiently severe to cause reasonably hardy individuals to compromise their political beliefs and associations in favor of the prevailing party" is not ripe for determination. <u>See</u> <u>Twombly</u>, 550 U.S. at 570; <u>see also</u> <u>Iqbal</u>, 556 U.S. 662.

Finally, Alvarado avers that she received three admonishment letters: one for asking to bring her son to work, one for allegedly refusing to perform her duties and one for an apparent pattern of absenteeism. (Docket No. 1, ¶¶ 22, 27, 30). According to Alvarado, these admonishments were unwarranted: an internal memorandum granted Alvarado the right to bring their children to work in emergency situations; Alvarado never refused work for the FPO; and Alvarado's absences were excused. (Docket No. 1, ¶¶ 22-25, 28, 30-31). <u>See</u> <u>Bart v. Telford</u>, 677 F.2d 622, 625 (7th Cir. 1982)(cited favorably in <u>Barton</u>, 632 F.3d at 30, for the proposition that a "'campaign of petty harassments,' including groundless reprimands of plaintiff and holding her up to ridicule for bringing a birthday cake to the office,

CIVIL NO. 10-2241 (JAG)                                           28

supported First Amendment claim"). Thus, the complaint at hand
is sufficient to show, at the pleading stage, that Alvarado
suffered an adverse employment action.

> d. Alvarado's PDP Affiliation as a Substantial or
>    Motivating Factor For the Adverse Employment Action

To state a claim for political discrimination under the
First Amendment, Alvarado must plead facts sufficient to support
"a reasonable inference that plaintiffs' political affiliation
was a substantial or motivating factor in the defendants'
conduct." Ocasio-Hernández, 640 F.3d at 16.   Alvarado must
plead facts specifying the role of each defendant in the adverse
employment action.   Id.   Defendants argue, in conclusory
fashion, that "Alvarado has also failed to plead with specific
facts that there is any connection between [Defendants] and
political discrimination." (Docket No. 17, p. 15).   To survive
a motion to dismiss, Alvarado's complaint must do more than
'[m]erely juxtapose[] a protected characteristic – someone
else's politics – with the fact that the plaintiff was treated
unfairly.'" Peguero-Moronta v. Santiago, 464 F.3d 29, 45 (1st
Cir. 2006)(internal citations omitted).   Moreover, the Court
agrees with Defendants that the mere conclusory statement that a
plaintiff faced an adverse employment action because of the
plaintiff's political affiliation is insufficient, without more,
to survive a motion to dismiss.   See Ocasio-Hernández, 640 F.3d

CIVIL NO. 10-2241 (JAG)                                                    29

at 12; Twombly, 127 S.Ct. at 1966; (Docket No. 1, ¶¶ 26, 33, 37-39, 41).

Alvarado's complaint does more than merely juxtapose her PDP membership with the alleged adverse employment action: Plaintiffs allege that Defendants made derogatory and discriminatory comments relating to Alvarado's PDP membership and work performance. (Docket No. 1, ¶ 32). Statements evincing political animus are often sufficient to show that a plaintiff's political affiliation was a substantial or motivating favor in an adverse employment decision. Peguero-Moronta, 464 F.3d at 45 (citing Rodríguez-Marín v. Rivera-González, 438 F.3d 72, 76 (1st Cir 2006)); compare Barry, 661 F.3d at 707-708 (holding that certain "stray remarks" are insufficient to demonstrate discriminatory animus sufficient to establish workplace discrimination); Marrero-Gutierrez v. Molina, 491 F.3d 1, 9-10 (1st Cir. 2007)(holding that mere allegations that an employee was badly treated and that the employee's political party was mocked is insufficient, at the summary judgment stage, to establish discriminatory animus).

Moreover, Alvarado is not required to bring forth a "smoking gun." Welch, 542 F.3d at 940 (internal citations omitted). Whether the adverse employment action takes place within close temporal proximity of a change in political

CIVIL NO. 10-2241 (JAG)                                                30

administration "unquestionably contributes at the motion to dismiss stage to the reasonable inference that the employment decision was politically motivated." Ocasio-Hernández, 640 F.3d at 18 (citing Peguero-Moronta, 464 F.3d at 53). Here, Alvarado, is an active member of the PDP. Once Alicea assumed the Municipality's mayorship in November of 2008, Defendants, who are all member of the NPP, allegedly began to humiliate, harass and discriminate against Alvarado because of her PDP affiliation. (Docket No. 1, ¶¶ 13, 26, 33, 37-39, 41).

Admittedly, whether Alvarado adequately pled that Defendants acted with discriminatory animus is a close call.[17] Nevertheless, because Alvarado's allegation that Defendants' made discriminatory comments regarding Alvarado's PDP affiliation, and the purported temporal proximity between Defendants purported adverse employment actions with the change in the mayorship from PDP to NPP coupled with the low threshold required to survive a Rule 12(b)(6) motion leads the Court to

---

[17] The Court's determination is especially difficult in light of the fact that Alvarado has not pled that the atmosphere in the Municipality was politically charged. A plaintiff may adequately plead that political affiliation was a substantial or motivating factor for an adverse employment action if: "[A] politically charged employment atmosphere 'occasioned by the major political shift from the NPP to the PDP . . . coupled with the fact that plaintiffs and defendant are of competing political persuasion []. Ocasio Hernández, 640 F.3d at 17 (internal citations omitted). As previously mentioned, Alvarado plausibly pleaded that Defendants' and Alvarado are members of competing political parties and the alleged unconstitutional conduct only began once Alicea, a NPP member, replaced Robles, a PDP member as the Municipality's mayor. Nevertheless, Alvarado is unable to gain the benefit of the inference because Alvarado did not plead that the atmosphere in the Municipality was politically charged, or something analogous thereto.

CIVIL NO. 10-2241 (JAG)                                           31

conclude that Alvarado plausibly pled that Alvarado's PDP affiliation was a substantial motivating factor in the alleged adverse employment action.

### 2. Fifth Amendment

The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V.   The First Circuit Court of Appeals has consistently held that the Fifth Amendment is inapplicable to causes of action against the Commonwealth of Puerto Rico and private persons.   See, e.g., Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007); Sanchez v. Pereira-Castillo, 573 F.Supp.2d 474, 484 (D.P.R. 2008)(citing Public Utilities Commission v. Pollak, 343 U.S. 451, 461 (1952))).   Alvarado brought suit against the Municipality and various Municipal employees; not the federal government.   Thus, Alvarado's Fifth Amendment claim is hereby **DISMISSED WITH PREJUDICE**.

### 3. Fourteenth Amendment

The Fourteenth Amendment to the Constitution states, in pertinent part, "nor shall any state deprive any person of life, liberty, or property, without due process of law (the "Due Process Clause"); nor deny to any person within its jurisdiction

CIVIL NO. 10-2241 (JAG)                                           32

the equal protection of laws (the "Equal Protection Clause")."
U.S. Const. amend. XIV.   The Court will address both clauses in
turn.

     a. Equal Protection Clause

    Defendants argue that Alvarado's claim brought under the
Equal Protection Clause must be dismissed because Alvarado is
not in a protected class and her Equal Protection claim is
merely an alternative legal theory to present her political
discrimination claim.   (Docket No. 17, pp. 20-21; Docket No. 18,
p. 17-18).   Alvarado does not set forth a substantive argument
explaining why her claim under the Equal Protection Clause
passes muster.[18]   (Docket No. 25, p. 13-15).

    The Equal Protection requires similarly situated
individuals to be treated in a similar manner.   See Marrero-
Gutierrez, 491 F.3d at 9 (citing City of Cleburne v. Cleburne
Living Ctr., 473 U.S. 432 (1985).   However, "[a]n equal
protection claim alleging political discrimination merely
restates a First Amendment political discrimination claim and .
. . [should be] considered under the First Amendment." Uphoff
Figueroa v. Alejandro, 597 F.3d 423, 426, 430 n. 8 (1st Cir.
2010);   Pagan, 448 F.3d at 36.

---

[18] Alvarado's response merely outlines the requirements to establish a claim
under the Equal Protection Clause.

The gravamen of Alvarado's complaint is that Defendants discriminated against her because of her PDP membership. (Docket No. 1, ¶¶ 13, 26, 33, 37-39, 41). As previously discussed at length, the First Amendment addresses a person's right to be free from political discrimination. See Barry, 661 F.3d 696, 699 (1st Cir. 2011). Therefore, Alvarado's claim pursuant to the Equal Protection Clause merely restates her First Amendment discrimination claim and is hereby **DISMISSED WITH PREJUDICE.**

b. Due Process Clause

A party may assert two categories of due process rights: substantive due process and procedural due process. See Maymi, 515 F.3d at 29. Alvarado only alleges that Defendants violated her procedural due process rights. (Docket No. 1, p. 12-13; Docket No. 25, pp. 13-15).

To establish liability under procedural due process, Alvarado must plausibly plead that: Alvarado was "[1] deprived of a property interest, [2] by [D]efendants acting under color of state law, and [3] without the availability of a constitutionally adequate process." Maymi, 515 F.3d at 29 (citing Marrero-Gutierrez, 491 F.3d at 8.

CIVIL NO. 10-2241 (JAG)                                              34

Property interests are not derived from the Constitution. Rather, property interests are created and have their contours defined by state law. Colon-Santiago v. Rosario, 438 F.3d 101, 108 (1st Cir. 2006)(internal citations and punctuation omitted). Puerto Rico law grants career employees a property interest in their continued employment. Colon-Santiago, 438 F.3d at 108 (internal citations omitted). Thus, in Puerto Rico, a public employee like Alvarado may not be terminated from employment without due process. Id. Yet, Alvarado does not contend that she was terminated from her job with the Municipality. Rather, Alvarado argues that her procedural due process rights were violated when Defendants (a) "proceeded to strip plaintiff of practically all function and duties inherent to her position . . . [and was] relegated to the performance of occasional tasks that properly pertain to a lower position"; and (b) "has been subject to written reprimands" without the opportunity to challenge them. (Docket No. 1, p. 12-13; Docket No. 25, p. 13-15).

Puerto Rico law grants public employees a property interest in their job. Ruiz-Casillas v. Camacho-Morales, 415 F.3d 127, 134 (1st Cir. 2005)(internal citations omitted). In contrast, public employees do not have a property interest in the duties the employee performs for their employer. Id. (holding that the

plaintiff did not have a claim under the Fourteenth Amendment because the plaintiff was not fired, his duties were merely downgraded).  Therefore, Alvarado does not have a due process claim when Defendants purportedly stripped Alvarado of her duties.

Similarly, Alvarado does not have a due process right to challenge Defendants' admonishments because Alvarado was not terminated or subject to an adverse employment action that had the effect of termination.  "[T]he Supreme Court has not decided whether procedural due process protections extend to employee discipline short of termination." See O'Connor v. Pierson, 426 F.3d 187, 197 (2d Cir. 2005)(citing Gilbert v. Homar, 520 U.S. 924, 929 (1997)).  In Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 9 (1st Cir. 2003), the First Circuit noted that an open-ended paid suspension may trigger due process protection if the suspension functions like a discharge from employment. Nevertheless, Alvarado was not suspended, with pay or otherwise. Alvarado does not cite, and the Court does not know of any Puerto Rico law, that grants Alvarado a right to due process prior to being sent an admonishment.  The Court declines to blaze new legal trails.

Alvarado does not have a property interest in her purportedly lost vacation days.  Alvarado argues that Defendants deducted

CIVIL NO. 10-2241 (JAG)                                        36

accrued vacation days without due process.    (Docket No. 25, p.
14).  Alvarado does not point to any Puerto Rican law creating a
property interest in vacation days.    Puerto Rico law permits
employees to "be paid a lump sum of money for the leaves of
absence he may have accumulated . . . and for his sick leave he
may have accumulated . . . on his removal from service."  3 P.R.
Laws Ann. tit. 3 § 703a. However, Alvarado was not discharged
from the Municipality.  Ramírez-De Leon v. Mujica-Cotto, 345 F.
Supp. 2d 174, 189 (D.P.R. 2004)("[P]ayment of the accumulated
vacation leave is only in order when the resignation or
separation results in the definite severance from service.")
Moreover, even if the loss of vacation days constituted a
property right, any purported loss of vacation days would have
been de minimis. See Germano v. City of Mayfield Heights, 648
F.Supp. 984, 985 (N.D.Ohio 1986), aff'd 833 F.2d 1012 (6th Cir.
1987) (holding that the alleged property interests at stake,
sick leave and a clothing allowance, were insignificant such
that a predetermination hearing was not required).

**B. Defendants' Participation in the Constitutional Violation**

To be held liable under section 1983, Alvarado must plausibly
plead that her purported constitutional injury "resulted from
direct acts or omissions of the official, or from indirect
conduct that amounts to condonation or tacit authorization.'"
Ocasio-Hernández, 640 F.3d at 16 (citing Rodríguez-García, 610

F.3d at 768).   Alvarado adequately pled that the Defendants participated in the adverse employment action.   Once Alicea assumed the Municipality's mayorship, Defendants, who are all members of the NPP, allegedly began to humiliate, harass and discriminate against Alvarado because of her PDP affiliation. (Docket No. 1, ¶¶ 13, 26, 33, 37-39, 41).  Plaintiffs allege that Defendants made derogatory and discriminatory comments relating to Alvarado's PDP membership and work performance.   (Docket No. 1, ¶ 32).

In addition, Alvarado also pled other facts regarding Maldonado's involvement in the alleged political discrimination. According to the complaint, "Plaintiff has been denied her breaks, limited her access to her computer and is constantly being monitored by Defendant Maldonado . . ."  (Docket No. 1, ¶ 16).   Moreover, after Alvarado was informed that the five (5) days she requested as leave to take care of her sick son would be deducted from her vacation days, Maldonado did not provide an official explanation even after being asked to do so.  (Docket No. 1, ¶ 31).

As for Alicea, Alvarado spoke to him about Maldonado's apparent hostility on July 12, 2010.  (Docket No. 1, ¶ 19). According to Alvarado, despite knowing about the discrimination, Alicea did not take action.  Id.  Rather, Alicea has permitted

CIVIL NO. 10-2241 (JAG)                                    38

and promoted the discrimination, harassment and undue pressure asserted against Alvarado. _Id._ Since Alverado complained to Alicea, Defendants' discriminatory behavior has escalated. _Id._; _See_ _Ocasio-Hernández_, 640 F.3d at 16 ("This standard can be satisfied by conduct setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury")(internal citations and quotations omitted). Supervisors may be liable under section 1983 if the supervisor was a direct participant in the alleged unconstitutional conduct or when "the supervisor's action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence of the supervisor amounting to deliberate indifference." _Bisbal-Ramos v. City of Mayaguez_, 467 F.3d 16, 24 (1st Cir. 2006). Alvarado, therefore, alleged sufficient facts to raise a plausible inference that Alicea was deliberately indifferent to Alvarado's First Amendment right to be free from political discrimination.

Alvarado also alleges that Solivan and Rivera-Mercado violated the constitution when they altered her duties and assisted in issuing the purportedly unwarranted admonishment letters. In June of 2010, Maldonado and nonparty Rivera assigned Alvarado a

CIVIL NO. 10-2241 (JAG)                                         39

task to complete for the FPO.  (Docket No. 1, ¶ 18).  Rivera-Mercado replaced Rivera in the FPO.  After assuming the post, Rivera-Mercado told Alvarado that although she was not required to work for the FPO, she may continue her assignment as long as her other duties did not suffer.  Id.  Rivera-Mercado told Alvarado that Alvarado could return the assignment to Rivera-Mercado's office should she become overwhelmed with her other work.  Id.  Despite the fact that Alvarado never refused to do work for the FPO, on August 18, 2010, Alvarado received a letter from Solivan, admonishing her for refusing to perform duties assigned to her.  (Docket No. 1, ¶¶ 21, 22).  Solivan told Avarado that the admonishment was based on a letter Rivera-Mercado sent to Maldonado.  Apparently, Rivera-Mercado told Maldonado that Alvarado failed to perform duties for the FPO. (Docket No. 1, ¶¶ 23-24). The complaint states that Alvarado never refused work for the FPO, she merely told Rivera-Mercado about her new duties.  (Docket No. 1, ¶ 21).  Thus, Solivan and Rivera-Mercado were plausibly involved in an alleged adverse employment action.

## C. Qualified Immunity

"The qualified immunity doctrine provides public officials an immunity from suit and not a mere defense to liability." Maldonado v. Fontanes, 568 F.3d 263, 268 (1st Cir. 2009)(citing

-39-

Mitcell v. Forsyth, 472 U.S. 511, 526 (1985)).  To determine whether a defendant is entitled to qualified immunity, the Court applies a two-part test.  Id.  "A court must decide: (1) whether the facts shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation.'"  Id. (citing Pearson v. Callahan, 129 S.Ct. 808, 815-16)).  Here, the first prong is not at issue because the Court previously concluded that Alvarado plausibly pled a political discrimination claim under the First Amendment.  At issue is the second element, whether the violation was "clearly established" at the time of the alleged violation.

"A right is 'clearly established' if the contours of the right are sufficiently clear such that 'a reasonable official would understand that what he is doing violates that right.'"  Costa-Urena v. Segarra, 590 F.3d 18, 29 (1st Cir. 2009)(internal citations omitted).  Alicea, Santos, Rivera-Mercado and Maldonado are not entitled to qualified immunity because a plaintiff's First Amendment right to be free from political discrimination is clearly established.[19]  Roldan v. Cerez-Suarez, 115 F.3d 58, 65-66 (1st Cir. 1997).  Alvarado alleges that she was discriminated against because of her PDP membership after

---

[19] The Municipality does not allege that they are entitled to qualified immunity.

CIVIL NO. 10-2241 (JAG)                                          41

Alicea, a member of the NPP, was elected the Municipality's mayor in November of 2008.  (Docket No. 1, ¶¶ 11-12).  Because the right to be free from political discrimination is clearly established, Defendants' request for dismissal on qualified immunity grounds is hereby **DENIED WITH PREJUDICE.**

## III. FMLA

Pursuant to the FMLA, an "eligible employee" may, under certain circumstances, be entitled to 12 weeks of unpaid leave from work.  See <u>Colburn v. Parker Hannifin/Nichols Portland Div.</u>, 429 F.3d 325, 330 (1st Cir. 2005)(internal citations omitted).  As previously mentioned, an eligible employee may seek redress from an eligible employer if the employer interferes with, or retaliates against, an employee seeking FMLA leave.  <u>Roman</u>, 604 F.3d at 40 (internal citations omitted).  Alicea, Maldonado, Rivera-Mercado and Solivan argue that Alvarado's FMLA action must be dismissed because they are the Municipality's employees, not Alvarado's employer.  (Docket No. 17, p. 24).  The Municipality contends that Alvarado did not state a claim under the FMLA because employers are permitted to "substitute any of the accrued paid vacation leave for any leave provided under the FMLA."  (Docket No. 18, p. 19).

### 1. Supervisor Liability under the FMLA

CIVIL NO. 10-2241 (JAG)                                        42

Neither the Supreme Court nor the First Circuit Court of Appeals have addressed whether an employee's supervisors may be personally liable under the FMLA. See Mason v. Mass. Dep't of Envtl. Prot., 774 F.Supp.2d 349, 360 (D. Mass. 2011). The Third, Fifth and Eighth Circuits comprise the majority approach and recognize that a supervisor may be held liable under the FMLA. See Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 667 F.3d 408 (3d Cir. 2012)(citing Modica v. Taylor, 465 F.3d 174, 184 (5th Cir. 2006); Darby v. Bratch, 287 F.3d 673, 681 (8th Cir. 2002)). In contrast, the minority approach adopted by the Sixth and Eleventh Circuits do not recognize supervisory liability under the FMLA. Mitchell v. Chapman, 343 F.3d 811 (6th Cir. 2003); Wascura v. Carver, 169 F.3d 683 (11th Cir. 1999).

As explained by the court in Mason, the FMLA's plain meaning supports imposing liability on supervisors.[20] Mason, 774 F.Supp.2d at 363. The FMLA only attaches liability onto employers. Section 2611(4)(A)(i) of the FMLA defines an employer as: "any person engaged in commerce or in any industry or activity affecting commerce who employees 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year."

---

[20] The Mason court also rebutted the three arguments set forth by the Sixth Circuit Court of Appeals in Mitchell, 343 F.3d 811. The Court finds the Mason court's reasoning compelling.

In section 2611(4)(A)(ii)(I), the definition extends to "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." Section 2611(4)(A)(iii) states that public agencies are also considered employers. Thus, the definition of employer includes public agency employees, such as Alicea, Maldonado, Rivera-Mercado and Solivan, who act in their employer's interest. <u>Mason</u>, 774 F.Supp.2d at 363. Accordingly, the Court agrees with the majority approach: Alicea, Maldonado, Rivera-Mercado and Solivan may be considered employers that may be held liable under the FMLA. <u>Id.</u>

### 2. Substitution of Vacation Leave for FMLA Leave

Defendants argue that they may not be held liable under the FMLA because Defendants were permitted to deduct the five (5) days Alvarado was absent from work to tend to her son from Alvarado's accrued vacation days. (Docket No. 18, p. 19). The FMLA provides that "an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave . . ." for FMLA leave. 29 U.S.C. § 2612(D)(2)(A). Alvarado's complaint does not indicate whether, at the time of her son's emergency, Alvarado had as many as five (5) unused vacation days. Therefore, the Court is unable to dismiss Alvarado's FMLA claim because the Court is unable to

determine that Defendants lawfully substituted FMLA leave for vacation leave. Whether Defendants' conduct was lawful will be addressed at the summary judgment stage when the parties are permitted to submit evidence extrinsic to the complaint.

## IV.  Commonwealth of Puerto Rico Law

Plaintiffs invoke the Court's supplemental jurisdiction to bring state law claims under: Article II, section 1, 4, 6 and 7 of the Constitution of Puerto Rico; Public Personnel Laws of Puerto Rico;[21] Article 1802; Article 1803; Law 100; and Law 184. Defendants argue that Plaintiffs fail to state a cause of action under Law 100, Article 1802 and Article 1803. (Docket No. 17, pp. 26-29; Docket No. 18, pp. 22-24)

### A. Law 100

Law 100 makes it unlawful for an employer to discriminate against an employee because of, *inter alia*, the employee's political affiliation. 29 P.R. Laws Ann. § 146. Defendants argue that Plaintiffs' claims brought under Law 100 must be dismissed because: (1) Plaintiffs failed to establish a prima facie case of political discrimination under either the First, Fourteenth or Fifteenth Amendments to the Constitution; (2) Law 100 is not applicable to the Municipality; and (3) there is no

---

[21] The Court is unaware of any Puerto Rico statute entitled "Public Personnel Laws of Puerto Rico. Plaintiffs do not provide a citation to that statute.

CIVIL NO. 10-2241 (JAG)                                      45

individual liability under Law 100.  (Docket No. 17, pp. 27-28;
Docket No. 18, pp. 23-24).  Defendants' first argument fails
because the Court previously concluded that Alvarado stated a
claim under the First Amendment.  Although Plaintiffs are unable
to state a claim against the Defendants in their official
capacities, Alvarado is able to state a claim against Alicea,
Maldonado, Rivera-Mercado and Solivan in their individual
capacities.

As a preliminary matter, Ramirez's and the Conjugal
Partnership's action must be dismissed because they are not the
Municipality's employees.  See Santini Rivera v. Serv. Air,
Inc., 137 D.P.R. 1, 1994 P.R. Eng. 909 (1994).  Law 100 is
concerned exclusively with labor and the employee-employer
relationship; Law 100 "has nothing to do . . . with third
persons or with other persons that are not employees."  Id.
Thus, an employee's spouse and the conjugal partnership formed
between them do not have standing to assert a claim under Law
100. See Id.  Because Ramirez was not Defendants' employee,
Ramirez does not assert a claim under Law 100.  Id.
Accordingly, Ramirez and the Conjugal Partnership's claim under
Law 100 are **DISMISSED WITH PREJUDICE.**

Unlike Ramirez and the Conjugal Partnership, Alvarado is
employed by the Municipality.  (Docket No. 1, ¶¶ 3, 10).

Alvarado brought suit against the Municipality and several of the Municipality's employees because they allegedly discriminated against Alvarado while she was working for the Municipality. (see Docket No. 1). Law 100, however, does not apply to municipalities and municipal employees. Marin-Piazza v. Aponte-Rogue, 873 F.2d 432, 436 (1st Cir. 1989); Pérez-González v. Municipality of Añasco, 769 F.Supp.2d 52, 65 (D.P.R. 2010)(internal citations omitted). Accordingly, Alvarado's cause of action, under Law 100, against Defendants in their official capacities is hereby **DISMISSED**.

Although Alvarado is unable to state a cause of action against Defendants in their official capacities, Law 100 permits claims against a public agency's employees in their personal capacities. Lamboy-Ortiz v. Ortiz-Vélez, 630 F.3d 228, 240 (1st Cir. 2010)(citing Rodriguez-Narvaez v. Pereira, 552 F.Supp.2d 211, 217-18 (D.P.R. 2007); Santiago-Díaz v. Rivera-Rivera, No. 10-1749, 2011 WL 2898964, at *6 (D.P.R. July 15, 2011)(internal citations omitted). Accordingly, Alvarado's claim, pursuant to Law 100, against Alicea, Alvarado, Rivera-Mercado and Solivan in their personal capacities survives.

## B. Article 1802 and 1803

Pursuant to Article 1802 persons are obligated to pay damages when "by an act or omission [they] cause damage to another

through fault or negligence." P.R. Laws Ann. Tit. 31, § 5141.
Article 1803 provides an exhaustive list of circumstances in
which a party, such as an employer, may be vicariously liable
for the torts committed by another party. P.R. Laws Ann. tit.
31 § 5142; Vernent v. Torres, 740 F.Supp.2d 280, 286-87 (D.P.R.
Sept. 28, 2010)(internal citations omitted). Defendants posit
that Plaintiffs' Article 1802 claim must be dismissed because
Plaintiffs' Article 1802 claim and Law 100 claim overlap.
(Docket No. 17, p. 27; Docket No. 18, p. 23). Defendants also
state, in conclusory fashion, that Plaintiffs' claim brought
under Article 1803 must be dismissed because "that statute is
inapplicable to appearing defendants." (Docket No. 17, p. 27).

Alvarado alleges that she was discriminated against because
of her PDP affiliation. (Docket No. 1, ¶¶ 13, 26, 33, 37-39,
41). Since the gravamen of Alvarado's state law claim is
political discrimination pursuant to Law 100, Alvarado is
precluded from also bringing suit under Article 1802 and Article
1803. Santiago-Díaz, 2011 WL 2898964, at *6; Gonzalez v.
Torres, No. 09-1850, 2011 WL 4529924, at *25 (D.P.R. July 1,
2011)(report and recommendation adopted in part and rejected in
part by González Santos v. Torres Maldonado, No. 09-1850, 2011
WL 4498950, at *2 (D.P.R. Sept. 28, 2011). Accordingly,

CIVIL NO. 10-2241 (JAG)                                              48

Alavardo's claim brought under Article 1802 and Article 1803 is hereby **DISMISSED WITH PREJUDICE**.

Nevertheless, Ramirez and the Conjugal Partnership may pursue derivative claims under Article 1802 and 1803.[22] Gonzalez-Figueroa v. J.C. Penny P.R., Inc., 568 F.3d 313, 318 (1st Cir. 2009)(internal citations omitted); Rivera-Cartagena, 767 F. Supp. 2d at 320 (internal citations omitted). The gravamen of Ramirez's suit isn't that he was subject to political discrimination but he suffered an injury derivative of the discrimination suffered by his wife. (Docket No. 1, ¶¶ 42-43). Accordingly, Ramirez's claim under Article 1802 does not overlap with Law 100 and should not be dismissed. Santiago-Díaz, 2011 WL 2898964, at *6.

**CONCLUSION**

For the reasons stated above, Alicea, Solivan, Rivera-Mercado, Maldonado's motion to dismiss (Docket No. 17) and the

---

[22] The Court notes that, unlike an action brought under section 1983, a spouse and conjugal partnership may have standing under Article 1802 and Article 1803, even if they were not the subject of the alleged underlying unlawful conduct. Rodriguez-Rios v. Cordero, 138 F.3d 22, 23 (1st Cir. 1998)(internal citations omitted); Rivera-Caragena,767 F.Supp.2d at 320 (internal citations omitted). The complaint states that Defendants' discriminatory acts towards Alvarado also caused injury to Ramirez and the Conjugal Partnership. (Docket No. 1, ¶ 42). Ramirez suffered from anxiety after watching the deterioration of Alvarado's mental health. (Docket No. 1, ¶ 43). Thus, Ramirez and the Conjugal Partnership have standing to bring suit under Article 1802 and Article 1803.

**CIVIL NO.** 10-2241 (JAG)                                             49

Municipality's motion to dismiss (Docket No. 18) are hereby **GRANTED IN PART** and **DENIED IN PART.**

In short, the claims remaining in this case are as follows: (1) Alvarado's First Amendment claim pursuant to section 1983; (2) Alvarado's FMLA claim; (3) Alvarado's Law 100 claim against Alicea, Maldonado, Rivera-Mercado and Solivan in their personal capacities; and (4) Ramirez's and the Conjugal Partnership's derivative Article 1802 and Article 1803 claims.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of March, 2012.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge