# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

EDNALIS ALVARADO-COTTO, et al.,

    Plaintiffs,

    v.

MUNICIPALITY OF AIBONITO, et al.,

    Defendants.

CIVIL NO.: 10-2241 (JAG)

## REPORT AND RECOMMENDATION

On December 17, 2010, plaintiffs Ednalis Alvarado Cotto ("plaintiff" or "Alvarado"), Jesús Ramírez Rodríguez, and their conjugal partnership (collectively, "plaintiffs") filed a complaint against defendants Municipality of Aibonito ("Municipality"), William Alicea Pérez ("Alicea"), Lissandra Maldonado Alvarado ("Maldonado"), Luis Jacobo Rivera Mercado ("Rivera"), and Santos Soliván Rivera ("Soliván") (collectively, "defendants").[1] (D.E. 1). On April 2, 2012, the court dismissed all claims except for Alvarado's claims under the First Amendment pursuant to 42 U.S.C. § 1983, the Family and Medical Leave Act ("FMLA"), and Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 146 ("Law 100"), and the derivative claims under Articles 1802 and 1803. (D.E. 45).

Pending before the court is defendants' motion for summary judgment on the remaining claims.[2] (D.E. 57). Plaintiffs have filed a response in opposition.[3] (D.E. 66). For the reasons set forth below, it is recommended that defendants' motion be granted.

---

[1] Alicea, Maldonado, Rivera, and Soliván were sued in their personal and official capacities.

[2] Although only the Municipality and the individual defendants in their official capacities submitted the pending motion, the individual defendants in their personal capacities have joined the motion. (D.E. 60; 61).

[3] On January 4, 2013, defendants were granted leave to file a reply and a motion to strike (D.E. 74), but have not filed the same.

## I.   SUMMARY OF UNCONTESTED MATERIAL FACTS[4]

In February 1999, plaintiff began working as an "office worker" in the Human Resources Office of the Municipality of Aibonito. (D.E. 57-3, at 11 ll. 10–12). Plaintiff's position involved "clerical and secretarial duties," such as drafting correspondence, filing of documents, keeping log records, answering the phone and other office work. (D.E. 57-1, ¶ 3). Prior to 2009, plaintiff was a close friend of the Human Resources Director. As such, she enjoyed a "flexible work schedule," and was permitted to arrive and leave freely at different hours without registering her hours. (D.E. 57-29, ¶ 6). At some point, plaintiff's job title changed to Office Systems Assistant I or Auxiliary Office System I.[5] (D.E. 57-1, ¶¶ 1–3, 8, 35, 51; D.E. 68-1, ¶¶ 1–3, 8, 35, 51).

In January 2009, Alicea was inaugurated as mayor of the Municipality of Aibonito. Before 2008, Alicea was not involved in politics, but had always voted for the New Progressive Party ("NPP"). A group requested that he run for mayor. When he took office, Alicea knew plaintiff "by sight" and knew that she worked for Human Resources at the Municipality. (D.E. 57-5, at 26 ll. 22-25). Maldonado became the Human Resources Director of the Municipality and plaintiff's supervisor in January 2009 as well. Prior to that point, Alicea did not know Maldonado. As of August 29, 2012, he did not know her political affiliation. Although plaintiff and Maldonado had seen each other in grade school, they did not meet again until Maldonado began working for the Municipality. At the time, Maldonado was not a member of the NPP.

---

[4] Local Rule 56 "structures the presentation of proof at summary judgment." Goya Foods, Inc. v. Orion Distributors, Inc., Civ. No. 10-1168 (BJM), 2012 WL 1069191, at *1 (D.P.R. Mar. 29, 2012). It "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," CMI Capital Market Inv. v. González Toro, 520 F.3d 58, 63 (1st Cir. 2008), by requiring "a party opposing a motion for summary judgment to accept, deny, or qualify each entry in the movant's statement of material facts paragraph by paragraph and to support any denials, qualifications, or new assertions by particularized citations to the record." Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 6–7 (1st Cir. 2007). In accordance with Local Rule 56(e), all proposed facts that are properly supported by record evidence and have not been successfully controverted or qualified by the opposing party have been deemed admitted. Additional facts submitted by a party opposing a motion for summary judgment must be "contain[ed] in a separate section …, set forth in separate numbered paragraphs and supported by a record citation." Local Rule 56(c).

[5] Although the proposed fact states that the title change occurred "[d]uring the summer of 2009," the record citation in support of said fact indicates that it occurred before 2009. (See D.E. 57-3, at 14 ll. 5–13).

2

She only began participating in political activities in the summer of 2012, during the past referendum. After Alicea's election and Maldonado's appointment, plaintiff retained the same position, salary, office, fringe benefits, and work schedule. In June 2009, plaintiff's salary was increased by Alicea from $1,234 to $1,468 per month. (D.E. 57-1, ¶¶ 4–7, 10, 27, 48–50, 59–60, 62; D.E. 68-1, ¶¶ 4–7, 10, 27, 48–50, 59–60, 62).

In general, the duties of all of the employees at Human Resources involve administrative office work.[6] Maldonado would give written work instructions with deadlines to plaintiff. Similar written work instructions were given to other staff members. Plaintiff's duties were modified after Human Resources employees filled out a job questionnaire prepared by Maldonado. The office work was then redistributed among the employees. As a result, on August 6, 2010, plaintiff was assigned to prepare Medical Plan reports. (D.E. 57-1, ¶¶ 9, 11–12, 38, 52, 55; D.E. 68-1, ¶¶ 9, 11–12, 38, 52, 55).

One of plaintiff's duties had been to provide support to the Office of Federal Programs. This task involved interviewing employees of independent contractors regarding hours worked and pay received. Immediately after the redistribution of work, plaintiff met with Rivera, the Director of the Office of Federal Programs, and told him that, because of the assignment regarding Medical Plan reports, she could not continue providing support to the Office of Federal Programs.[7] (D.E. 57-1, ¶¶ 39, 44, 56, 61; D.E. 68-1, ¶¶ 39, 44, 56, 61).

Plaintiff had not spoken with Maldonado prior to meeting with Rivera. It was not the first time that plaintiff had spoken with Rivera without consulting Maldonado. Because Maldonado was plaintiff's immediate supervisor, plaintiff was expected to speak with her before

---

[6] On one occasion, however, Maldonado invited plaintiff to attend a Thanksgiving activity organized by Alicea for the homeless at the public square. Although plaintiff did not want to attend, she did not say so to Maldonado. Other municipal employees attended the event. At another time, plaintiff was requested to help put up Christmas lights in the public square. (D.E. 57-1, ¶¶ 28–29; D.E. 68-1, ¶¶ 28–29).
[7] Prior to 2012, Rivera did not participate in political activities. (D.E. 57-1, ¶ 61; D.E. 68-1, ¶ 61).

3

meeting with Rivera. Rivera sent a memorandum to Maldonado informing her of his conversation with plaintiff. On August 18, 2010, Soliván issued a written warning to plaintiff, the only disciplinary action taken against plaintiff with respect to her refusal to continue providing support to the Office of Federal Programs without authorization from Maldonado. (D.E. 57-1, ¶¶ 10, 40–43, 57; D.E. 68-1, ¶¶ 10, 40–43, 57).

Disciplinary actions for employees are set forth in the Manual for Disciplinary Actions and the Autonomous Municipal Law. According to the Manual, the first disciplinary measure for "[w]ithout justification fail[ing] to comply with instructions or fail[ing] to perform assigned work" is "[o]ral or written admonishment." (D.E. 67-1, at 2). The first disciplinary measure for insubordination or "[r]efuse to follow the orders of [one's] supervisors" is "[s]uspension from 30 to 60 days or dismissal." Id. at 3. For "deficient attendance or punctuality," the first disciplinary measure is "[v]erbal or written admonishment," the second is "[w]ritten admonishment or suspension from 1 to 30 days," and the third is "[s]uspension from 30 to 60 days or dismissal." Id. For "[r]egular tardiness without a justifiable reason"—where regular tardiness is four or more within one month—the first disciplinary measure is "[o]ral or written admonishment," the second is "[w]ritten admonishment or suspension from 1 to 15 days," and the third is dismissal. Id. at 4. For "[a]bandon[ing] the work area to take care of personal matters without the previous authorization of the supervisor," the first disciplinary measure is "[v]erbal or written admonishment" and the second is "[w]ritten admonishment or [s]uspension from 1 to 30 days." Id.; (D.E. 57-1, ¶¶ 47, 54; D.E. 68-1, ¶¶ 47, 54).

During 2009, plaintiff arrived late or left early on fifty-two occasions. She was absent for thirty-one days, excluding two months of maternity leave. During 2010, plaintiff arrived late or left early on fifty-three occasions. She was absent for fifty-three days. According to plaintiff,

she arrived late to work at various times due to traffic, her son's medical conditions, and the weather. At one point, plaintiff received a verbal reprimand for absences and tardiness. Ivelisse Rodríguez ("Rodríguez"), one of Alvarado's colleagues, indicated that, after she began working in the Human Resources Office at the Municipality on October 1, 2010, Maldonado met with each of the employees to remind them of "the importance of punctual and regular attendance" at work. (D.E. 75-30, ¶¶ 1, 4); (D.E. 57-1, ¶¶ 14–15, 25, 36–37, 58; D.E. 68-1, ¶¶ 14–15, 25, 36–37, 58).

In November 2009, plaintiff was having a conversation with her cousin when Maldonado pointed to her watch, stating, "You've been with this person so long." (D.E. 57-3, at 41 ll. 22–25). On the same day, plaintiff had not been allowed to take a break for breakfast. In general, plaintiff would wait until she came to work to eat breakfast. Plaintiff met with Alicea about the situation. After Alicea intervened with the Human Resources Office, plaintiff did not have any other incident involving breakfast breaks. (D.E. 57-1, ¶¶ 22–24, 63–64; D.E. 68-1, ¶¶ 22–24, 63–64).

Plaintiff's son was sick between March 1 and 5, 2010. As such, plaintiff requested one week of leave. Leave was granted by defendants and charged to plaintiff's vacation leave. After deducting said five days of leave, plaintiff had a remaining balance of ten days. Subsequently, plaintiff objected to the use of her vacation leave, because she understood that, under Puerto Rico law, sick leave with pay was appropriate in her case. Maldonado told plaintiff that Law 184 was inapplicable and that, under the Autonomous Municipality Act, sick leave was only authorized where the employee herself was sick. Although plaintiff understood that leave pursuant to the FMLA would be without pay, she never requested that the five vacation leave days be reinstated or that any payments received be deducted from her salary. Under separate

5

circumstances, plaintiff sent a letter to Maldonado on November 28, 2011, requesting leave under FMLA, which was granted. (D.E. 57-1, ¶¶ 16–20; D.E. 68-1, ¶¶ 16–20).

Municipal rules prohibit employees from bringing minors to the work area. According to plaintiff, however, she was not allowed to bring her four- or five-year-old boy to the workplace, while other employees were so allowed. These other employees, however, "worked under a different supervisor, in another area, and belonged to the Popular Democratic Party and to the New Progressive Party." (D.E. 57-1, ¶ 31). According to plaintiff, of the four employees working for Maldonado at Human Resources, one belonged to the NPP, while the other three belonged to the Popular Democratic Party ("PDP"). (D.E. 57-1, ¶¶ 26, 30–32; D.E. 68-1, ¶¶ 26, 30–32).

One of the co-workers whom plaintiff indicated was permitted to bring her children to the office was Awilda Ortiz Colón ("Ortiz"), who does not belong to the NPP. On at least one occasion, Ortiz's older son, who was twelve years old at the time, brought his backpack to the office and immediately left. Her children, however, have never stayed at the office. Rodríguez has two small children, but has not brought them to work because she knows the municipal policy forbidding the same. (D.E. 57-1, ¶¶ 33–34, 36; D.E. 68-1, ¶¶ 33–34, 36).

## II.  LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." <u>Wynne v. Tufts Univ. Sch. of Med.</u>, 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'"

Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug., Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence …. So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." Greenburg v. P. R. Mar. Shipping Auth., 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory

allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

III. ANALYSIS

A. First Amendment

For a claim of political discrimination under the First Amendment, plaintiff "must point to evidence in the record that would 'permit a rational factfinder to conclude that the challenged personnel action occurred and stemmed from a politically based discriminatory animus." Padilla-García v. Guillermo Rodríguez, 212 F.3d 69, 74 (1st Cir. 2000). This showing, however, "'requires more than merely juxtaposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly.'" López-Rosado v. Molina-Rodríguez, Civ. No. 11-2198 (JAG), 2012 WL 4681956, at *4 (D.P.R. Sept. 28, 2012) (quoting Padilla-García, 212 F.3d at 74). Rather, a prima facie case of political discrimination "requires evidence that (1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's affiliation; (3) a challenged employment action occurred; and (4) political affiliation was a substantial or motivating factor behind it." Martínez-Vélez v. Rey-Hernández, 506 F.3d 32, 39 (1st Cir. 2007) (internal quotations and modifications omitted).

In response, "[a] defendant may contest this showing, offer a Mt. Healthy defense or both." Id. (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)). Under Mt. Healthy, "the defendant is given the opportunity to establish that it would have taken the same action regardless of the plaintiff's political beliefs …." Padilla-Garcia, 212 F.3d at 74. The Mt. Healthy defense "deals with employment actions driven by 'mixed motives,' and provides that where there are both 'lawful' and 'unlawful' reasons for the adverse employment action, 'if the lawful reason alone would have sufficed to justify the [action],' then the employee cannot prevail." Soto-Padro v. Pub. Bldgs. Auth., 675 F.3d 1, 6 (1st Cir. 2012) (quoting

8

McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 359 (1995)). Here, defendants both argue that plaintiff has failed to establish the latter three elements of the prima facie case and offer a Mt. Healthy defense.[8]

Defendants first contend that there is no evidence that they knew that plaintiff was a member of the PDP. (D.E. 57, at 6). As an initial matter, it is true that "circumstantial evidence alone can support a finding of political discrimination." Anthony v. Sundlun, 952 F.2d 603, 605 (1st Cir. 1991). "[A] plaintiff is not required to produce 'smoking gun' evidence of an employer's impermissible motive to defeat a motion for summary judgment." Welch v. Ciampa, 542 F.3d 927, 940 (1st Cir. 2008).

Nevertheless, in order to meet the second element of their prima facie case, plaintiff must produce evidence sufficient for a reasonable jury to conclude that defendants knew that Alvarado was a member of the PDP. In her response in opposition, plaintiff suggests only one reason why Maldonado, Rivera, or Soliván may have known about her political affiliation: "her employment history under the PDP administration." (D.E. 68, at 6). This fact alone, however, is insufficient for a reasonable jury to find that defendants had knowledge of Alvarado's party affiliation by a preponderance of the evidence. "The fact that the plaintiff[ was a] municipal employee[] under the previous administration does not constitute evidence of [her] political affiliation." Febus-Rodríguez v. Questell-Alvarado, 660 F. Supp. 2d 157, 172 (D.P.R. 2009). Moreover, "knowledge of political affiliation cannot be … established" even for a plaintiff who, unlike Alvarado, can show that she "held a trust/confidential/policymaking position in the outgoing administration." See Román v. Delgado Altieri, 390 F. Supp. 2d 94, 103 (D.P.R. 2005) (citing

---

[8] Although the political parties to which Alvarado, Maldonado, and Rivera are affiliated are not definitively established in defendants' Statement of Uncontested Material Facts (D.E. 57-1), defendants do not focus their arguments on the first element of the prima facie case. (See D.E. 57, at 6–11). Plaintiffs have not proposed any new facts regarding the political affiliation of Alvarado, Maldonado, and Rivera.

González-De-Blasini v. Family Dept., 377 F.3d 81, 85–86 (1st Cir. 2004)); see also Martí-Novoa v. Fortuño-Burset, Civ. No. 09-1355 (JAG), 2012 WL 4508116, at *9 (D.P.R. Aug. 13, 2012) ("Plaintiff argues that she is an active member of the PDP who does not hide her political affiliation and that she held several trust positions with PDP administrations; however, such evidence is insufficient to conclude that Fuentes knew that she was a PDP member."), report and recommendation adopted, 2012 WL 4511531 (D.P.R. Sept. 28, 2012). Thus, the mere fact of Alvarado's "employment history under the PDP administration," (D.E. 68, at 6), is insufficient for a reasonable jury to conclude that defendants knew that she was a member of the PDP.

Plaintiff points to no other evidence that Maldonado, Rivera, or Soliván would have had knowledge of Alvarado's membership in the PDP. For instance, there is no evidence to indicate that, when Maldonado requested that Alvarado attend two events in the public square, plaintiff stated or otherwise made them aware that she was a member of the PDP. Rather, it is uncontested that none of the defendants "ever made any political comment to Plaintiff." (D.E. 57-1, ¶ 10; D.E. 68-1, ¶ 10). Furthermore, as this court has previously noted, plaintiff in this case has not alleged that the atmosphere in the Municipality was politically charged, (D.E. 45, at 30 n.17), which the First Circuit has considered to be circumstantial evidence in favor of finding political discrimination. See, e.g., Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 241 (1st Cir. 2012); Barry v. Moran, 661 F.3d 696, 705 (1st Cir. 2011); Acevedo-Díaz v. Aponte, 1 F.3d 62, 69 (1st Cir. 1993); Kercado-Meléndez v. Aponte-Roque, 829 F.2d 255, 264 (1st Cir. 1987); but cf. Welch, 542 F.3d at 940 ("'[A] politically charged atmosphere … without more' is insufficient to establish a causal connection between an adverse employment action and a plaintiff's political affiliation (or non-affiliation) …." (quoting LaRou v. Ridlon, 98 F.3d 659, 661 (1st Cir. 1996))).

With respect to Alicea, plaintiff also states that he "bec[ame] aware of the discriminatory actions against Mrs. Alvarado." (D.E. 68, at 6). Nevertheless, the only incident involving Alicea which has been brought to the attention of the court is Alvarado's meeting with Alicea regarding her inability to take a break for breakfast one day. There is no indication that the record supports any inference that Alvarado or any other person mentioned her party affiliation during the meeting.[9] Because plaintiff has failed to meet the second element of her prima facie case, Alvarado's First Amendment claim should be dismissed.[10]

B. **Family and Medical Leave Act**

A plaintiff may assert two types of claims under FMLA: (1) interference with one's substantive rights under FMLA or (2) retaliation for the exercise of those rights. See Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 330 (1st Cir. 2005). In this case, plaintiff asserts a claim of retaliation.[11] (See D.E. 1, at 13–14 ¶¶ 7–9; D.E. 68, at 9). Even though there has been no showing that defendants have interfered with plaintiff's substantive rights under FMLA, she may still assert a claim under FMLA for retaliation. See Colburn, 429 F.3d at 333

---

[9] Moreover, it is uncontested that Alicea intervened with the Human Resources Office and that plaintiff did not experience any other incident involving breakfast breaks. (D.E. 57-1, ¶ 24; D.E. 68-1, ¶ 24).

[10] Furthermore, plaintiff concedes that Alicea, Rivera, and Soliván have not discriminated against her for political reasons. (D.E. 57-1, ¶ 45; D.E. 68-1, ¶ 45). Plaintiff's First Amendment claim should be dismissed with respect to these three defendants in their individual capacity for this reason as well.

[11] It does not appear that plaintiff has asserted a claim of interference under FMLA, as plaintiff makes no mention of defendants' substitution of vacation leave for her FMLA leave in her response in opposition. If plaintiff is asserting such a claim, however, it is recommended that the same be dismissed. It is uncontested that plaintiff requested five days of leave, that five days of leave were granted by defendants, and that the days were deducted from plaintiff's vacation days, rather than as unpaid leave under FMLA. Substitution of this sort is permissible under FMLA. See Bhd. of Maint. of Way Employees v. CSX Transp., Inc., 478 F.3d 814, 817 (7th Cir. 2007) ("As a general principle, the FMLA authorizes substitution of paid leave for FMLA leave."); see also Mena-Váldez v. E.M. T-Shirts Distributors, Inc., 878 F. Supp. 2d 357, 362 (D.P.R. 2012). Specifically, FMLA provides that "[a]n eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave provided under subparagraph (A), (B), (C), or (E) of subsection (a)(1) of this section for any part of the 12-week period of such leave under such subsection." 29 U.S.C. § 2612(d)(2)(A). From a plain reading of the provision, the employee's election and the employer's requirement are not conjunctive prerequisites. In other words, an employer may require the employee, without the election of the employee, to substitute accrued paid vacation leave for FMLA leave. Thus, defendants' substitution of plaintiff's paid vacation leave for her FMLA leave was not a violation of FMLA.

11

("Our law is clear that an FMLA plaintiff may pursue a retaliation claim even if there is no claim of violation of substantive rights to leave.").

A plaintiff may prove retaliation under FMLA "directly or by inference," retaining "the ultimate burden of proof … to prove by a preponderance of the evidence that the employer's adverse employment action was in retaliation for exercise of protected rights." Id. at 332. The "inferential model of showing intent" is effectively "a modified version of the framework established in McDonnell Douglas." Id. at 335 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). In other words, a claim of FMLA retaliation is analyzed "in the same manner that we would evaluate a claim of retaliation under other employment statutes, such as the ADA or Title VII." Castro-Medina v. Procter & Gamble Commercial Co., 565 F. Supp. 2d 343, 383 (D.P.R. 2008).

"Under that framework, a plaintiff employee must carry the initial burden of coming forward with sufficient evidence to establish a prima facie case of discrimination or retaliation." Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998). To establish a prima facie case of retaliation under FMLA, a "plaintiff must show (1) that he engaged in a protected action … ; (2) that he suffered an adverse employment action … ; and (3) that there was some possibility of a causal connection between the employee's protected activity and the employer's adverse employment action, in that the two were not wholly unrelated." Colburn, 429 F.3d at 336 n.10. The burden then "shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employee's [adverse action], sufficient to raise a genuine issue of fact as to whether it discriminated against the employee." Hodgens, 144 F.3d at 160 (internal quotations and modifications omitted). Finally, plaintiff must "show[] that the employer's stated

reason for [the adverse employment action] was in fact a pretext for retaliating against him for having taken protected FMLA leave." Id. at 161.

Here, plaintiff's claim of retaliation should be dismissed because she has not established the existence of an adverse employment action within the meaning of FMLA. The standard for "adverse employment action" is different under FMLA than in the First Amendment context. As this court noted, the standard for "adverse employment action" is less stringent under the First Amendment than in the Title VII context. (See D.E. 45, at 26 n.16); see also Rivera-Jiménez v. Pierluisi, 362 F.3d 87, 94 (1st Cir. 2004) (noting that "the standard for showing an adverse employment action is lower in the First Amendment retaliation context than it is in other contexts"). In the context of a FMLA claim, however, "[a]n adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." Chappell v. Bilco Co., 675 F.3d 1110, 1117 (8th Cir. 2012) (internal quotation omitted). Where, under the First Amendment, "even relatively minor events might give rise to liability," Rivera-Jiménez, 362 F.3d at 94, an adverse employment action "for purposes of a FMLA claim" must "effect[] a significant change in the plaintiff's employment status," Castro-Medina, 565 F. Supp. 2d at 383 n.21 (citing Abrahamson v. Sandoz, Inc., Civ. No. 06-CV-00636-W, 2008 WL 906124 (D. Colo. Mar. 31, 2008)). Similarly, under FMLA, "warnings, negative performance reviews or critiques are ordinarily not considered adverse employment actions, unless they result in a tangible loss of pay or benefits." Id. (citing Robinson v. Fulton County, Ga., Civ. No. 105CV-2250-RWS, 2008 WL 78711 (N.D. Ga. Jan. 4, 2008)). "Mere inconvenience without any decrease in title, salary, or benefits or that results only in minor changes in working conditions does not meet this standard." Chappell, 675 F.3d at 1117 (internal quotations omitted); cf. De Jesús-Gamboa v. Río Mar Associates LPSE, Civ. No. 10-2013 (JAF), 2012 WL 397612, at *8

(D.P.R. Feb. 7, 2012) ("Courts in this District have found that negative performance evaluations and warnings do not constitute materially-adverse employment actions under Title VII.").

Plaintiff received a verbal reprimand due to her absences and tardiness, (D.E. 57-1, ¶ 58, D.E. 68-1, ¶ 58), which she claims constitutes an adverse employment action, (D.E. 68, at 10).[12] As discussed above, an adverse employment action under FMLA requires a tangible change in an employee's working conditions such that it produces a material employment disadvantage. There is no evidence that plaintiff's working conditions changed as a result of the verbal reprimand. Rather, it is uncontested that, after Alicea's election and Maldonado's appointment, plaintiff has retained the same position, salary, office, fringe benefits, and work schedule, aside from an increase in salary in June 2009. (See D.E. 57-1, ¶ 6; D.E. 68-1, ¶ 6). Because plaintiff has not shown a significant change in her employment status, she has not met her prima facie burden for FMLA retaliation.

### C.  State Law Claims

Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state law claims when the federal claims that gave it original jurisdiction are dismissed. See 28 U.S.C. § 1367(c)(3); González-De-Blasini v. Family Dept., 377 F.3d 81, 89 (1st Cir. 2004); Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). If all federal claims are dismissed prior to trial, then the state law claims should be dismissed as well. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995). Because defendants are entitled to summary judgment on plaintiffs' only remaining federal

---

[12] Plaintiff also argues that she "was given conflicting information as to her request for the FMLA when she spoke to Defendant Maldonado about her situation, making her have to find the information elsewhere in order to request her right under the FMLA" and that "[t]he actions taken against Plaintiff made her work environment so unbearable that she had to take a leave of absence from her work and is undergoing psychological treatment." (D.E. 68, at 9–10). The court, however, has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." Local Rule 56(e). It is not readily apparent which specific facts in defendant's Statement of Uncontested Material Facts (D.E. 57-1)—the only separate statement of facts—support these contentions.

claims, it is recommended that their state law claims be dismissed without prejudice.  See López-Rosado v. Molina-Rodríguez, Civ. No. 11-2198 (JAG), 2012 WL 4681956, at *5 (D.P.R. Sept. 28, 2012); Dávila-Feliciano v. Puerto Rico State Ins. Fund Corp., 754 F. Supp. 2d 351, 367 (D.P.R. 2010).

**IV.    CONCLUSION**

It is hereby recommended that defendants' motion for summary judgment (D.E. 57) be **GRANTED**.  Alvarado's claims under the First Amendment and FMLA should be **DISMISSED WITH PREJUDICE**.  Alvarado's claim under Law 100 and the derivative claims under Articles 1802 and 1803 should be **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO RECOMMENDED.**

The parties have fourteen (14) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this report and recommendation. Fed. R. Civ. P. 72(b)(2); Fed. R. Civ. P. 6(c)(1)(B); Local Rule 72(d); see also 28 U.S.C. § 636(b)(1); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).

In San Juan, Puerto Rico, this 5th day of April, 2013.

s/Marcos E. López  
U.S. Magistrate Judge